IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VICTOR FABIAN LOPEZ,<br><br>**Plaintiff,**<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., et al.,<br><br>**Defendants.** | Case No. 3:19-CV-1299-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Dismiss ("Pai MTD") (Doc. 84) filed by Defendants Vasantha Peraje Pai ("Pai") and Vasantha Pai, M.D. P.C. ("Pai P.C."). Further pending is a Motion to Dismiss Counts I-IV and XII-XX for Failure to State a Claim (Doc. 86) ("Wexford MTD") filed by Defendants Wexford Health Sources, Inc. ("Wexford"); Mohammed Siddiqui ("Siddiqui"), John R. Trost ("Trost"), Michael Moldenhauer ("Moldenhauer"); Andrew Tilden ("Tilden"), Latanya Williams ("Williams"), Alma Martija ("Martija"); and Ghaliah Obaisi, as the Independent Executor of the Estate of Saleh Obaisi ("Obaisi"). Also pending is a Motion to Dismiss ("Bianco MTD") (Doc. 92) filed by Defendant Francesco M. Bianco ("Bianco"). For the reasons set forth below, the Court grants in part and denies in part the Wexford MTD and denies the Bianco MTD and the Pai MTD.

This action is based on an allegedly delayed diagnosis of a gastrointestinal stromal tumor after Plaintiff Victor Fabian Lopez ("Lopez") was treated by the defendant medical professionals and providers.

**FACTUAL & PROCEDURAL BACKGROUND**

The facts of this case are not disputed for the purposes of the instant motions, and the Court will not extensively restate the facts, instead referring to the facts as stated in the motions and in the report of Dr. Slivnick, attached to plaintiff's complaint.

At all times relevant to the action, Lopez was incarcerated in correctional facilities operated by the Illinois Department of Corrections ("IDOC"). Specifically, Lopez was incarcerated at Pontiac Correctional Center ("Pontiac") from October 17, 2008 to July 3, 2015; Stateville Correctional Center ("Stateville") from July 3, 2015 to September 20, 2016; and Menard Correctional Center ("Menard") from September 20, 2016 through January of 2019 (Doc. 10 at ¶¶ 2-3).

Lopez filed his initial complaint in the Northern District of Illinois on April 26, 2019, and filed an amended complaint on June 4, 2019 (Docs. 1, 10). Lopez's amended complaint contains twenty counts, Counts I-IV alleging of deliberate indifference to medical needs under 42 U.S.C. § 1983 and Counts V-XX alleging medical malpractice under Illinois state law (Doc. 10). Lopez included with his complaint an affidavit with an accompanying report from Dr. David Slivnick (the "Slivnick Report") intended to satisfy 735 Ill. Comp. Stat. § 5/2-622, which requires that complaints alleging medical malpractice include an affidavit from a qualified medical professional concluding that there is reasonable cause for filing the action (Doc. 10 at 96-108).

The Pai MTD was filed on September 19, 2019, and asserts that Counts VII and VIII of the complaint should be dismissed because the Slivnick Report "fails to delineate the standard of care applicable to each of the named Defendants" and fails to allege that Slivnick is familiar with the standard of care applicable to gastroenterologists like Pai or that Pai breached the applicable standard of care (Doc. 84). The Bianco MTD makes similar allegations about the insufficiency of the Slivnick Report in regard to Count XI of the complaint.

The Wexford MTD makes similar allegations about the insufficiency of the Slivnick Report in supporting the counts against certain of the Wexford defendants associated with Menard Correctional Center ("Menard Defendants"), and further argues that claims against Wexford defendants associated with the Stateville Correctional Center ("Stateville Defendants") are barred by the two-year statute of limitations. The Wexford MTD lastly argues that Count XX against Wexford itself should be dismissed because it is based solely on respondeat superior and the underlying counts against Wexford employees should be dismissed for the reasons already outlined.

## LEGAL STANDARD

In addressing a motion to dismiss for failure to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assess whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Khorrami v. Rolince*, 539 F.3d 782, 788 (7th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

The Court of Appeals for the Seventh Circuit has clarified that, even after *Twombly*,

courts must still approach Rule 12(b)(6) motions by construing the complaint in the light most favorable to the non-moving party, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied,* 558 U.S. 1148 (2010) (quoting *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008)).

## DISCUSSION

### I. Sufficiency of the Slivnick Report

*A. Applicable Law*

As required under 735 Ill. Comp. Stat. § 5/2-622, a plaintiff who seeks damages in a suit for medical malpractice must provide with the complaint an affidavit from a medical professional. That affidavit must confirm that the affiant has consulted with a medical professional who:

(i) is knowledgeable in the relevant issues involved in the particular action;

(ii) practices or has practiced within the last 6 years or teaches or has taught within the last 6 years in the same area of health care or medicine that is at issue in the particular action; and

(iii) is qualified by experience or demonstrated competence in the subject of the case; that the reviewing health professional has determined in a written report, after a review of the medical record and other relevant material involved in the particular action that there is a reasonable and meritorious cause for the filing of such action; and that the affiant has concluded on the basis of the reviewing health professional's review and consultation that there is a reasonable and meritorious cause for filing of such action.

*Id.*

The affidavit must identify the profession of the reviewing medical professional and must include a copy of the written report, "clearly identifying the plaintiff and the

reasons for the reviewing health professional's determination that a reasonable and meritorious cause for the filing of the action exists," absent certain defined exceptions. *Id.*

Illinois courts have held that a plaintiff's § 2-622 report must "specifically discuss the involvement of each defendant and must consist of more than generalized conclusions of malpractice." *Jacobs v. Rush North Shore Medical Center*, 284 Ill. App. 3d 995, 1000 (1st Dist. 1996); *see also Moss v. Gibbons*, 180 Ill. App. 3d 632, 638 (4th Dist. 1989). A report need not specifically name each defendant, as long as it is "sufficiently broad to cover each defendant, adequately discusses deficiencies in the medical care given by defendants, and establishes that a reasonable and meritorious cause exists for filing the action." *Sherrod v. Lingle*, 223 F.3d 605, 614 (7th Cir. 2000) (quoting *Neuman v. Burstein*, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992)).

A report under § 2-622 must show that the reporting medical professional is qualified "in the subject of the case[,]" and experienced "in the same area of health care that is at issue…in the particular action." This does not, however, mean that the reporting professional must have the same qualifications as the defendants. In *Hull v. Southern Ill. Hosp. Servs.*, 356 Ill. App. 3d 300, 305 (Ill. App. Ct. 2005), for example, the Court found that a pulmonary internist was qualified to provide a report relating to claims against a radiologist, as the case itself involved an intravenous injection rather than a CAT scan. In general, Illinois courts have consistently upheld the proposition that a licensed physician is capable of providing a report to sustain claims against any other licensed physician as long as the reporting physician has sufficient experience in the subject matter of the case at hand. *See, e.g., Cuthbertson v. Axelrod*, 282 Ill. App. 3d 1027, 1037 (Ill. App. Ct. 1996)

("We are not requiring labels and artificial barriers… the physician needs to state that she has recent experience in the area of healthcare at issue.")

In a recent decision published since the defendants filed their motions to dismiss, the Seventh Circuit weighed in on the applicability of the § 2-622 affidavit requirement in *Young v. United States*, 942 F.3d 349 (7th Cir. 2019). In *Young*, the Seventh Circuit concluded that even a complaint filed without any affidavit would not necessarily be defective. Rather, a plaintiff has until summary judgment to present a full and complete affidavit in compliance with § 2-622, allowing a physician to take full advantage of discovery and review all relevant materials before opining as to whether there is reasonable cause for liability. *Id.* at 351-52. Accordingly, an allegedly insufficient affidavit is not cause for dismissal, but rather serves to put a party "on notice" of the need for a more fulsome affidavit. *Id.* at 352.

B. *Discussion*

In the wake of the Seventh Circuit's ruling in *Young*, discussed above, it is the view of the Court that the sufficiency of the Slivnick Report could not serve as grounds to dismiss any counts of the complaint, and that even if the Court were to find that report deficient at this stage, Lopez could still submit an amended report up until summary judgment. As the issue is fully briefed, however, and as the Court has reviewed the Slivnick Report and determined that it is sufficient in its current state, the Court will review the arguments regarding the Slivnick Report so as to avoid having to revisit this issue at a later date.

In the Wexford MTD, defendants argue that the Slivnick Report is insufficient to support the malpractice counts against the Menard Defendants. The Slivnick Report generally states that defendants failed to meet the applicable standard of care by failing to evaluate underlying GI pathology for a patient in Lopez's condition and failing to order appropriate follow-up diagnostic tests (Doc. 10 at 105). The Wexford MTD correctly notes that this rationale does not fully apply to the Menard Defendants—Lopez was transferred to Menard on September 20, 2016, and was referred to a gastroenterologist only seven days later, a delay which does not seem negligent. This does not, however, explain the failure to order follow-up diagnostic tests after the colonoscopy and EGD came back normal (*Id.* at 106). While the Wexford MTD asserts that this failure to order follow-up tests should be ascribed to Pai, the gastroenterologist, rather than the Menard Defendants, the Slivnick Report appears to assert that this standard should be applied to a patient's primary physicians who provided the referral to the gastroenterologist as well as to the gastroenterologist. Accordingly, the Slivnick Report does succeed in enunciating a standard of care and asserting a breach by the Menard Defendants, establishing reasonable cause for the action, and thus it is sufficient to support the counts against the Menard Defendants.

The Pai MTD makes similar arguments regarding the similarity of the Slivnick Report to support counts against Pai and Pai P.C.—as discussed, the Slivnick Report in fact does assert both a standard of care and deviance from that standard on the part of Pai and her practice. Namely, the Slivnick Report states that a physician presented with a patient such as Lopez should have ordered further diagnostic tests upon receiving a

normal colonoscopy and EGD. The Slivnick Report further notes that Pai did not order any further tests. Pai further asserts that the Slivnick Report is insufficient because Slivnick is not himself a gastroenterologist, and thus he cannot adequately assess the standard that should be applied to gastroenterologists like Pai. Pai, however, does not have any case law to support this argument. Section 2-622 requires that the physician providing the required report be "qualified by experience and or demonstrated competence" in the subject of the case and have "practiced…in the same area of health care" that is at issue in the particular action. Nothing supports the idea that the certifying physician must have the exact same qualification and practice the same subspecialty as a defendant physician. Here, Slivnick has clarified that he has extensive experience dealing with patients presenting symptoms much like those of Lopez and has extensively reviewed similar case pathologies. Accordingly, he is qualified to opine on the treatment of patients like Lopez, including treatment by gastroenterologists, even though he himself is not a gastroenterologist. To require more specific qualifications would be prohibitively difficult, likely requiring multiple affidavits by physicians in many different specialties whenever a plaintiff sought to bring an action against multiple medical professionals. Accordingly, the Slivnick Report is sufficient to support the counts against Pai and Pai P.C.

The Bianco MTD makes similar allegations about the sufficiency of the affidavit to support counts against Bianco, a surgeon. First, the Bianco MTD argues that Slivnick's qualifications are insufficient to judge the standard of care applicable to Bianco because Slivnick is not a surgeon. Secondly, the Bianco MTD argues that Slivnick's statements

regarding the care provided by physicians at University of Illinois Hospital is overly general and non-specific to Bianco. Lastly, the Bianco MTD argues that Slivnick's statements are overly conclusory and do not explain the basis for his conclusions regarding the care provided by physicians at University of Illinois Hospital. All of these arguments are unavailing.

As discussed in relation to the Pai MTD, an affidavit need not be provided by a medical professional with the exact same qualifications as the defendant. Rather, the report must be provided by a physician who is skilled in the subject matter of the case. Here, Bianco is a surgeon, but Slivnick is not opining on his performance of a surgical procedure, but rather the steps taken by Bianco and other staff to diagnose and treat a patient presenting symptoms like those reported by Lopez. Slivnick's qualifications are more than sufficient for him to provide an expert opinion in this regard.

As for the specificity of Slivnick's statements regarding treatment at University of Illinois Hospital, he states clearly at the start of his statement (Doc. 10 at 98) that the records he reviewed were those of Bianco. When he later refers to the care provided at University of Illinois Hospital (*Id.* at 104-05), it seems clear that he is primarily referring to Bianco, and that the failings he describes can be ascribed to Bianco. Lastly, the Bianco MTD's argument that Slivnick's statements are overly conclusory takes those statements out of context. While it is true that Slivnick merely states that physicians at University of Illinois Hospital "should have chosen to evaluate his symptoms…rather than focusing all of their attention on his right inguinal hernia[,]" (*Id.* at 104) this conclusion is explained by Slivnick's observations regarding Lopez's many gastrointestinal symptoms that were

seemingly unrelated to the hernia. It seems clear to this Court that Slivnick concludes that based on the range of symptoms presented, it was negligent for Bianco and the other medical staff at the University of Illinois Hospital to focus only on the hernia without seeking to diagnose and treat his other underlying gastrointestinal issues. Accordingly, the Slivnick Report is sufficient to support the counts against Bianco.

## II.   Statute of Limitations

### A. Applicable Law

Medical malpractice and § 1983 claims are considered personal injury claims and are governed by the personal injury statute of limitations laws in the state where the alleged injury occurred. *Delgado-Brunet v. Clark*, 93 F.3d 339, 342 (7th Cir. 1996). Illinois has a two-year statute of limitations for personal injury actions. 735 Ill. Comp. Stat. Ann. 5/13–202 (2008); *Anton v. Lehpamer*, 787 F.2d 1141, 1142 (7th Cir. 1986).

Although state law determines the length of the statute of limitations, federal law determines when that statute of limitations begins to accrue. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1991). Generally, both malpractice and § 1983 claims accrue when they are first discovered by the plaintiff. *Id.* However, constitutional claims brought under § 1983 are subject to the "continuing violation doctrine," which holds that they accrue when the defendant is no longer capable of doing anything to remedy the wrong in question. *See, e.g.*, *Heard v. Elyea*, 525 Fed. Appx. 510, 511 (7th Cir. 2013); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) (noting that in malpractice action suit accrues on date of discovery, but action for constitutional violation accrues at the end of the continuing violation).

  *B. Discussion*

   The Wexford MTD argues that both Tilden and the Stateville Defendants should be dismissed from this case because the claims against them are barred by the statute of limitations. Wexford notes that Lopez was only treated by Tilden while incarcerated at Pontiac from October 17, 2008 to July 3, 2015; he was only treated by the Stateville Defendants while incarcerated at Stateville from July 3, 2015 to September 20, 2016. After July 3, 2015, and September 20, 2016, Tilden and the Stateville Defendants were no longer treating Lopez and had no ability to change his treatment. Lopez does not dispute these facts, but rather focuses on the Illinois statute of repose for negligence actions.

   The Wexford MTD is correct in noting that the doctrine of continuing violation applies to claims under § 1983, and that the counts alleging constitutional violations by Tilden and the Stateville Defendants are barred by the statute of limitations. That doctrine does not apply, however, to actions for medical malpractice, which are subject to the standard rule of discovery. Accordingly, only Counts I through IV are dismissed.

**III.** **Respondeat Superior**

   The Wexford MTD claims that the count against Wexford itself should be dismissed because it is based solely on respondeat superior, and the underlying counts against individual Wexford employees should be dismissed. Because the Court has declined to dismiss the counts against individual Wexford employees, it will not dismiss the count against Wexford.

CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** the Wexford MTD, dismissing Counts I through IV of the complaint. The Court **DENIES** the Pai MTD and the Blanco MTD.

**IT IS SO ORDERED.**

DATED:   July 15, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**